# In the United States Court of Federal Claims

No. 21-1765C

(E-Filed: March 25, 2022)[1]

|  |  |  |
|---|---|---|
| E&L CONSTRUCTION GROUP, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Bid Protest; Unconditional Ownership. |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) ) | |
| and | ) ) | |
| RANDY KINDER EXCAVATING, INC. D/B/A RKE CONTRACTORS, | ) ) ) ) | |
| Intervenor-defendant. | ) ) | |

John B. Dunlap, III, Baton Rouge, LA, for plaintiff. Jennifer A. Fiore and Alexis M. Breedlove, of counsel.

Miles K. Karson, Trial Attorney, with whom were Brian M. Boynton, Acting Assistant Attorney General, Patricia M. McCarthy, Director, and Elizabeth M. Hosford, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Nathan Menard, United States Department of Veterans Affairs, and Beverley Hazlewood, United States Small Business Administration, of counsel.

---

[1] This opinion was filed under seal on March 4, 2022. See ECF No. 47. The parties were invited to identify source selection, propriety, or confidential material subject to deletion on the basis that the matter is protective/privileged. No redactions were proposed by the parties. See ECF No. 50 (joint status report). Thus, the sealed and the public versions of this opinion are identical, except for the publication date and this footnote.

Meghan F. Leemon, Washington, DC, for intervenor-defendant.  Peter B. Ford, Samuel S. Finnerty, and Anna R. Wright, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

Plaintiff filed this bid protest challenging the United States Small Business Administration's (SBA) decision that it was "ineligible for award of the [Veterans Administration's (VA)] Fort Sill Project, Solicitation No. 36C78621B0004, Contract No. 36C78621C0046 . . . and ineligible to compete as a Service Disabled Veteran Owned Small Business [(SDVOSB)] concern."  ECF No. 1 at 2.  Plaintiff explains that "[a]s a result of this determination, the VA, through [the Center for Verification Evaluation (CVE)] removed [plaintiff] from its Vendor Information Pages [(VIP)] database," which "precludes [plaintiff] from competing for any VA SDVOSB set-aside procurements."  Id.

Defendant filed the administrative record (AR) in this case on September 17, 2021, see ECF No. 26, and the parties' cross-motions for judgment on the AR, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC), are now before the court.  On December 9, 2021, plaintiff filed a motion for judgment on the AR.  See ECF No. 35.  On December 28, 2021, intervenor-defendant filed a cross-motion for the judgment on the AR,[2] see ECF No. 37, and defendant filed a cross-motion for the judgment on the AR on December 29, 2021, see ECF No. 39.

In ruling on the motions, the court has considered:  (1) the complaint, ECF No. 1; (2) the AR, ECF No. 26; (3) plaintiff's motion for judgment on the AR, ECF No. 35; (4) intervenor-defendant's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 37; (5) defendant's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 39; (6) plaintiff's reply in support of its motion and response to the cross-motions, ECF No. 41; (7) defendant's reply in support of its cross-motion, ECF No. 43; and (8) intervenor-defendant's reply in support of its cross-motion, ECF No. 45.

The motions are now fully briefed, and ripe for decision.  The parties did not request oral argument, and the court deems such argument unnecessary.  The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, the motion and cross-motions for judgment on the AR are **DENIED**, and this matter is **REMANDED**.

---

[2]  Because intervenor-defendant's arguments track closely with defendant's, the court does not separately discuss intervenor-defendant's arguments because they are neither different from the arguments made by defendant nor pertinent to this decision.

2

I.  Background

On March 17, 2021, the VA issued an invitation for bids (IFB), set aside for SDVOSBs, for work to be performed at Fort Sill National Cemetery.  See ECF No. 26-3 at 70.  The contracting officer opened the bids on April 22, 2021, and plaintiff was the lowest bidder.  See ECF No. 26-4 at 63-72 (plaintiff's bid); id. at 254 (notice of award to plaintiff); id. at 757 (notice to unsuccessful bidders).

On April 29, 2021, intervenor-defendant challenged plaintiff's status as a SDVOSB, which the contracting officer referred to the SBA's Office of Hearings and Appeals (OHA).[3]  See ECF No. 26-3 at 6-13 (intervenor-defendant's protest); id. at 4-5 (contracting officer's letter to the SBA forwarding the protest).  Intervenor-defendant filed a supplemental protest, on June 14, 2021, in which it argued that plaintiff did not satisfy the ownership requirement for SDVOSB status, based on the company's operating agreement.  See ECF No. 26-12 at 1-14.

In a decision issued on August 17, 2021, the SBA determined that plaintiff was not eligible to compete as an SDVOSB because it was not unconditionally owned by a service-disabled veteran.  See ECF No. 26-12 at 68-91.  The section of the OHA's analysis that is central to this dispute is worth re-printing, despite its length.  The OHA explained, as follows:

> The regulations require that an SDVOSB must be at least 51% unconditionally and directly owned by one or more Service-Disabled Veterans. 13 C.F.R. § 125.12. In In the Matter of Wexford Group International, Inc., SBA No. SDV-105, at 6 (2009), OHA addressed the issue of what constituted unconditional ownership:
>
>> In the context of 13 C.F.R. § 125.9, unconditional necessarily means there are no conditions or limitations upon an individual's present or immediate right to exercise full control and ownership of the concern. Nor can there be any impediment to the exercise of the full range of ownership rights. Thus, a service-disabled veteran: (1) Must immediately and fully own the company (or stock) without having to wait for future events; (2) Must be able to convey or transfer interest in his ownership interest or stock whenever and to whomever they choose; and (3) Upon departure, resignation, retirement, or death, still own their stock and do with it as they choose. In sum, service-disabled veterans must immediately have an

---

[3]  Intervenor-defendant also challenged plaintiff's size, but plaintiff's size is not at issue in this protest action.  See ECF No. 35-1 at 11 n.5.

> absolute right to do anything they want with their ownership interest or stock, whenever they want.

Wexford, at 6.

OHA has consistently applied the Wexford standard. In Matter of Veterans Contracting Group, Inc., SBA No. VET-265 (2017), OHA explicitly rejected the Court of Claims reasoning in Miles and AmBuild, because those cases were based upon a different Department of Veterans Affairs regulation. OHA's definition was upheld in Veterans Contracting Group, Inc. v. United States, 135 Fed. Cl. 316, 321 (2017). The court found that although it felt that Wexford "produces draconian and perverse results in a case such as this one", it had to uphold OHA's interpretation of the regulation. Veterans Contracting, at 328.

In 2018, the regulations were amended to further define unconditional ownership:

> Unconditional ownership means ownership that is not subject to conditions precedent, conditions subsequent, executory agreements, voting trusts, restrictions on or assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another (other than after death or incapacity). The pledge or encumbrance of stock or other ownership interest as collateral, including seller-financed transactions, does not affect the unconditional nature of ownership if the terms follow normal commercial practices and the owner retains control absent violations of the terms.

13 C.F.R. § 125.11.

Thus, SBA later defined unconditional ownership at 13 C.F.R. § 125.11, adding the exceptions for death, incapacity, and pledges of stock as collateral if the terms follow normal commercial practices, but did not otherwise disturb the Wexford definition. 83 Fed[.] Reg. 48908, 48909 (Sep. 28, 2018). OHA has further held that provisions of an Operating Agreement dealing with the bankruptcy of an owner do not render that ownership conditional. Matter of Veterans Contracting Group, Inc., SBA No. VET-265, at 8 (2017).

The definition of unconditional ownership is therefore clear. The Service-Disabled Veteran's ownership of the challenged concern must be unlimited, with no restrictions whatever on their ownership, or their ability to dispose of their [s]hares in anyway they choose. The exceptions are agreements

4

> dealing with the death, incapacity or bankruptcy of a shareholder, and the pledge of stock as collateral if the terms follow normal commercial practices. It is important to note that the exception the regulation carves out for "normal commercial practices" is limited to provisions involving the pledge of an ownership interest as collateral.

ECF No. 26-12 at 88-90.  As a result of this decision, plaintiff was removed from the VIP database on August 20, 2021.  See ECF No. 1-7 at 2 (Exhibit G to the complaint).  Plaintiff now protests the OHA's August 27, 2021 decision and its removal from the VIP database on the basis that the OHA irrationally applied the Wexford definition of "unconditional ownership."[4]  See ECF No. 1 at 6; see also ECF No. 35-1 at 18 (asserting that the SBA "misapplie[d] current regulations and relie[d] instead on overruled jurisprudence" in determining whether plaintiff was unconditionally owned by a service-disabled veteran).

II.     Legal Standards

In its complaint, plaintiff invokes this court's bid protest jurisdiction.  See ECF No. 1 at 1.  This court's bid protest jurisdiction is based on the Tucker Act, which gives the court authority:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).  The Tucker Act also states that the court may grant "any relief that the court considers proper . . . including injunctive relief."  28 U.S.C. § 1491(b)(2).

To establish jurisdiction, a plaintiff must therefore demonstrate that it is an "interested party."  28 U.S.C. § 1491(b)(1).  The United States Court of Appeals for the Federal Circuit has held that the "interested party" requirement "imposes more stringent standing requirements than Article III."  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009).  Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest.'"

---

[4]     Although defendant initially agreed to a voluntary stay in this case, that stay has expired.  See ECF No. 18 at 2 (noting defendant's agreement to a voluntary stay through December 31, 2021).

5

See id. (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006)) (alteration in original).

Once jurisdiction is established, the court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). First, the court determines, pursuant to the Administrative Procedure Act standard of review, 5 U.S.C. § 706, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)). If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351.

To establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). "In other words, the protestor's chance of securing the award must not have been insubstantial." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citations omitted). The substantial chance requirement does not mean that plaintiff must prove it was next in line for the award but for the government's errors. See Sci. & Mgmt. Res., Inc. v. United States, 117 Fed. Cl. 54, 62 (2014); see also Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract."). But plaintiff must, at minimum, show that "had the alleged errors been cured, . . . 'its chances of securing the contract [would have] increased.'" Precision Asset Mgmt. Corp. v. United States, 125 Fed. Cl. 228, 233 (2016) (quoting Info. Tech., 316 F.3d at 1319).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As the Supreme Court of the United States has explained, the scope of review under the "arbitrary and capricious" standard is narrow. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974). "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,'" and "'[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, 575 F.3d at 1368-69 (stating that under a highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

6

III.    Analysis

    A.    The Governing Definition of "Unconditional Ownership"

Prior to 2018, the VA and the SBA employed competing definitions of the term "unconditional ownership," when determining whether a small business concern was unconditionally owned by a service-disabled veteran, such that the business qualified to compete for contracts as an SDVOSB. See ECF No. 35-1 at 19-20 (memorandum in support of plaintiff's motion for judgment on the AR outlining the differing definitions of "unconditional"); ECF No. 39 at 14 (defendant's response and cross-motion recognizing the same divergence in definitions).

Because the SBA's pre-2018 regulations did not expressly define "unconditional ownership," the SBA applied the definition as articulated by the OHA in Wexford Grp. Int'l, Inc., SBA No. SDV-105, 2006 WL 4726737 (Jun. 29, 2006). The Wexford decision stated, in relevant part, as follows:

> In the context of 13 C.F.R. § 125.9, unconditional necessarily means there are no conditions or limitations upon an individual's present or immediate right to exercise full control and ownership of the concern. Nor can there be any impediment to the exercise of the full range of ownership rights. Thus, a service-disabled veteran: (1) Must immediately and fully own the company (or stock) without having to wait for future events; (2) Must be able to convey or transfer interest in his ownership interest or stock whenever and to whomever they choose; and (3) Upon departure, resignation, retirement, or death, still own their stock and do with it as they choose. In sum, service-disabled veterans must immediately have an absolute right to do anything they want with their ownership interest or stock, whenever they want.

Wexford, 2006 WL 4726737 at *6.

Unlike the SBA's regulations, the VA's regulations did include an express definition of unconditional ownership prior to 2018, which read in pertinent part, as follows:

> Ownership must not be subject to conditions precedent, conditions subsequent, executory agreements, voting trusts, restrictions on assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another (other than after death or incapacity). The pledge or encumbrance of stock or other ownership interest as collateral, including seller-financed transactions, does not affect the unconditional nature of ownership if the terms follow normal commercial practices and the owner retains control absent violations of the terms.

7

38 C.F.R. § 74.3(b) (2011).  Plaintiff cites as meaningful precedent two cases in which this court interpreted the pre-2018 VA regulation—Miles Construction, LLC v. United States, 108 Fed. Cl. 792 (2013) and AmBuild Company, LLC v. United States, 119 Fed. Cl. 10 (2014).  See ECF No. 35-1 at 20.

In 2018, "pursuant to Congressional mandate, the VA and SBA issued new regulations to consolidate and standardize definitions for SDVOSBs." ECF No. 39 at 14, 14-15 (explaining the statutory background of the effort to standardize the definitions). The resulting standardized definition is codified as follows:

> Unconditional ownership means ownership that is not subject to conditions precedent, conditions subsequent, executory agreements, voting trusts, restrictions on or assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another (other than after death or incapacity). The pledge or encumbrance of stock or other ownership interest as collateral, including seller-financed transactions, does not affect the unconditional nature of ownership if the terms follow normal commercial practices and the owner retains control absent violations of the terms.

13 C.F.R. § 125.11.  As plaintiff notes, the standardized definition includes language that is identical to the VA's pre-2018 regulation.  See ECF No. 35-1 at 20-21.  Compare 38 C.F.R. § 74.3(b) (2011), with 13 C.F.R. § 125.11.

### B. The OHA Has Not Adequately Explained Its Application of the Wexford Standard

Despite the fact that the new regulation mirrors the pre-2018 VA regulation, defendant insists that the OHA was correct in applying the pre-2018 SBA Wexford standard for determining whether ownership is unconditional.  See ECF No. 39 at 15-17.  Given the current record, however, the court is unable to fully evaluate this legal position.

As noted above, in its August 17, 2021 decision, the OHA supports its interpretation of the current regulatory definition of "unconditional ownership" as follows:

> OHA has consistently applied the Wexford standard. In Matter of Veterans Contracting Group, Inc., SBA No. VET-265 (2017), OHA explicitly rejected the Court of Claims reasoning in Miles and AmBuild, because those cases were based upon a different Department of Veterans Affairs regulation. OHA's definition was upheld in Veterans Contracting Group, Inc. v. United States, 135 Fed. Cl. 316, 321 (2017).  The court found that although it felt that Wexford "produces draconian and perverse results in a case such as this

> one", it had to uphold OHA's interpretation of the regulation. Veterans Contracting, at 328.
>
> . . .
>
> The SBA later defined unconditional ownership at 13 C.F.R. § 125.11, adding the exceptions for death, incapacity, and pledges of stock as collateral if the terms follow normal commercial practices, but did not otherwise disturb the Wexford definition. 83 Fed[.] Reg. 48908, 48909 (Sep. 28, 2018). OHA has further held that provisions of an Operating Agreement dealing with the bankruptcy of an owner do not render that ownership conditional. Matter of Veterans Contracting Group, Inc., SBA No. VET-265, at 8 (2017).
>
> The definition of unconditional ownership is therefore clear. The Service-Disabled Veteran's ownership of the challenged concern must be unlimited, with no restrictions whatever on their ownership, or their ability to dispose of their [s]hares in anyway they choose.

ECF No. 26-12 at 89-90. This explanation is insufficient for at least three reasons.

First, the document to which the OHA cites in support of its contention that the 2018 version of 13 C.F.R. § 125.11 added several exceptions, "but did not otherwise disturb the Wexford definition," discusses neither the Wexford definition nor the effect of the new regulation on existing caselaw. Id. at 90; see Ownership and Control of Service-Disabled Veteran-Owned Small Business Concerns, 83 FR 48908-01, 2018 WL 4632075 (Sep. 28, 2018). In its August 17, 2021 decision, the OHA did not explicitly articulate why it believes the cited rule-making document supports its conclusion that the Wexford definition remains largely undisturbed.[5] Absent such an articulation, it is unclear to the court how the OHA arrived at this conclusion, and the court is unable to evaluate the same.

Second, the authority upon which the OHA relies, in addition to Wexford, is equally flawed. The OHA issued its decision in Veterans Contracting Group, Inc., SBA No. VET-265, 2017 WL 4124865 (Aug. 21, 2017), prior to the issuance of the new regulation. As a result, the holding in that decision cannot provide insight into the continued applicability of pre-2018 SBA decisions to the new regulation that mirrors the pre-2018 VA language.

---

[5] The court notes that the OHA did cite to Alog Corporation, Appellant, SBA No. VET-285, 2020 WL 4559510 (July 21, 2020), a decision issued after the 2018 regulation was enacted, in which OHA applied the Wexford definition. The Alog decision, however, suffers from the same deficient explanation as the OHA decision at issue in this case, and is, therefore, of little use in understanding the OHA's reasoning.

And third, in 2018, the Federal Circuit dismissed as moot an appeal that was filed just before the new regulations took effect. See Veterans Contracting Grp., Inc. v. United States, 743 F. App'x 439, 441 (Fed. Cir. 2018). The Circuit explained its decision, in relevant part, as follows:

> the SBA has promulgated new regulations that change the definition of the requisite unconditional ownership by a service-disabled veteran, effectively overturning Wexford. See Ownership and Control of Service-Disabled Veteran-Owned Small Business Concerns, 83 Fed. Reg. 48,908 (Oct. 1, 2018) (to be codified at 13 C.F.R. § 125). These regulations now govern [the protestor's] eligibility as an SDVOSB. As a result, [the protestor's] request for restoration of its SDVOSB eligibility under previous SBA regulations is moot.

Veterans Contracting, 743 F. App'x at 441. According to defendant, the Circuit's statement that Wexford was "effectively overturn[ed]," id., by the 2018 regulations is "dicta," and "cannot be construed as a holding that the SBA regulations replace the Wexford standard, given that the issue was not before the court," ECF No. 39 at 21. Instead, defendant essentially argues for a more nuanced interpretation of the 2018 regulatory definition than the Federal Circuit indicates—insisting that it modified, but did not entirely replace—the Wexford definition. See id. at 20-21.

It appears to the court that the Federal Circuit chose to dismiss the case, at least in part, due to the effect of the new regulations on the Wexford standard. As such, the effect of the regulations was an operative part of the Circuit's decision. See Veterans Contracting, 743 F. App'x at 441.

Absent a sufficiently reasoned basis for the continued application of the Wexford standard, particularly in light of the Federal Circuit's holding in Veterans Contracting, the court is unprepared to sustain the OHA's decision in this case. It is appropriate, however, to provide the OHA with an opportunity to provide such an explanation. For that reason, the court will remand this case to the OHA for further explanation of the legal basis for applying the Wexford definition. The court will give the parties an opportunity to file renewed motions for judgment on the AR following remand, if appropriate.

IV. Conclusion

Accordingly, for the foregoing reasons:

(1) Pursuant to 28 U.S.C. § 1491(b)(2) and RCFC 52.2(a), plaintiff's claims are **REMANDED** to the United States Small Business Administration so that the agency may address the matters identified in this opinion;

(2) The initial duration of the remand is **one-hundred eighty days** from the date of this opinion, or until **August 31, 2022**, which may be extended, upon motion, pursuant to RCFC 52.2(c), or which may be shortened should the agency complete its reconsideration process sooner;

(3) On or before **March 11, 2022**, defendant is directed to **FILE** a **status report** providing the court with the name and address of the agency representative on whom the court should serve a certified copy of this opinion and order;

(4) Plaintiff's motion for judgment on the AR, ECF No. 35, is **DENIED**;

(5) Intervenor-defendant's cross-motion for judgment on the AR, ECF No. 37, is **DENIED**;

(6) Defendant's cross-motion for judgment on the AR, ECF No. 39, is **DENIED**;

(7) The clerk's office is directed to **STAY** this case until further order of the court;

(8) On or before **March 25, 2022**, the parties are directed to **CONFER** and **FILE** a **notice** attaching the parties' agreed upon redacted version of this opinion, with all competition-sensitive information blacked out;

(9) Pursuant to RCFC 52.2(b)(1)(D), the parties are directed to **FILE** a **joint status report** on or before **May 3, 2022** and **July 5, 2022** indicating the status of proceedings on remand; and

(10) Pursuant to RCFC 52.2(e), the parties are directed to **FILE** a **notice** within **five days** after the conclusion of remand proceedings that sets forth the parties' positions regarding whether further litigation of this matter is necessary. If further proceedings are appropriate, the parties shall include a proposed schedule to govern this case going forward.

IT IS SO ORDERED.

                                                s/Patricia E. Campbell-Smith
                                                PATRICIA E. CAMPBELL-SMITH
                                                Judge