# In the United States Court of Federal Claims

No. 21-1765C

(E-Filed **UNDER SEAL**: August 3, 2022)
(Reissued: August 22, 2022)[1]

|  |  |  |
|---|---|---|
| E&L CONSTRUCTION GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Post Award Bid Protest; Small |
| THE UNITED STATES, | ) | Business Administration; Service- |
| | ) | Disabled Veteran Owned Small |
| Defendant, | ) | Business; 13 C.F.R. § 125.11; |
| | ) | Unconditional Ownership. |
| and | ) | |
| | ) | |
| RANDY KINDER EXCAVATING, INC. | ) | |
| D/B/A RKE CONTRACTORS, | ) | |
| | ) | |
| Intervenor-defendant. | ) | |

John B. Dunlap, III, Baton Rouge, LA, for plaintiff. Jennifer A. Fiore and Alexis M. Breedlove, of counsel.

Miles K. Karson, Trial Attorney, with whom were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Elizabeth M. Hosford, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Marcia A. McCree, United States Department of Veterans Affairs, and Beverley Hazlewood, United States Small Business Administration, of counsel.

---

[1] This opinion is filed under seal on August 3, 2022. See ECF No. 63. The parties were invited to identify source selection, propriety, or confidential material subject to deletion on the basis that the matter is protective or privileged. On August 22, 2022, the parties filed a notice indicating no proposed redactions. See ECF No. 65. Thus, the sealed and the public versions of this opinion are identical, except for the publication date and this footnote.

Meghan F. Leemon, Washington, DC, for intervenor-defendant.  Peter B. Ford and Samuel S. Finnerty, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

Before the court are the parties' supplemental briefs in support of their cross-motions for judgment on the administrative record (AR) in this case, filed after the issuance of the United States Small Business Administration's (SBA) Office of Hearings and Appeals' (OHA) decision on remand from this court.  See ECF No. 60 (plaintiff's supplemental memorandum in support of its motion); ECF No. 61 (intervenor-defendant's supplemental memorandum); ECF No. 62 (defendant's supplemental brief in support of its motion).  Because the court has ruled on the parties' motions for judgment on the AR, see ECF No. 47 (sealed opinion and order); ECF No. 51 (opinion and order reported at E&L Constr. Grp., LLC v. United States, 159 Fed. Cl. 115 (2022)), the court will deem the supplemental briefs to be renewed motions for judgment on the AR.

In ruling on the renewed motions the court has considered:  (1) the complaint, ECF No. 1; (2) the AR, ECF No. 26; (3) plaintiff's motion for judgment on the AR, ECF No. 35; (4) intervenor-defendant's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 37; (5) defendant's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 39; (6) plaintiff's reply in support of its motion and response to the cross-motions, ECF No. 41; (7) defendant's reply in support of its cross-motion, ECF No. 43; (8) intervenor-defendant's reply in support of its cross-motion, ECF No. 45; (9) the supplement to the AR, ECF No. 59; (10) plaintiff's renewed motion for judgment on the AR, ECF No. 60; (11) intervenor-defendant's renewed cross-motion for judgment on the AR, ECF No. 61; and (12) defendant's renewed cross-motion for judgment on the AR, ECF No. 62.

The parties' motions are now fully briefed, and ripe for decision.  The parties did not request oral argument, and the court deems such argument unnecessary.  The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, plaintiff's renewed motion for judgement on the AR is **DENIED**, and defendant's and intervenor-defendant's renewed cross-motions are **GRANTED**.

I.     Background[2]

   A.     Procedural History

Plaintiff filed this bid protest challenging the SBA's decision that it was "ineligible for award of the [Veterans Administration's (VA)] Fort Sill Project, Solicitation No. 36C78621B0004, Contract No. 36C78621C0046 . . . and ineligible to compete as a Service-Disabled Veteran Owned Small Business [(SDVOSB)] concern." ECF No. 1 at 2.  Plaintiff explains that "[a]s a result of this determination, the VA, through [the Center for Verification Evaluation (CVE)] removed [plaintiff] from its Vendor Information Pages [(VIP)] database," which "precludes [plaintiff] from competing for any VA SDVOSB set-aside procurements." Id.

The parties filed cross-motions for judgment on the AR, see ECF No. 35, ECF No. 37, ECF No. 39, and the court issued a decision on the motions on March 4, 2022, see ECF No. 47; ECF No. 51.  In its opinion, the court determined that the OHA failed to adequately explain its legal position in its decision regarding plaintiff's status.  See ECF No. 51 at 8-10.  Specifically, the court determined that the OHA's explanation for its application of Wexford Grp. Int'l, Inc., SBA No. SDV-105, 2006 WL 4726737 (Jun. 29, 2006), the legal standard for determining whether ownership is unconditional, known as the Wexford standard, was inadequate.  See id. at 8.  As a result, the court was unable to evaluate the OHA's conclusion and remanded the case to the OHA for further explanation on three issues:

> First, the document to which the OHA cites in support of its contention that the 2018 version of 13 C.F.R. § 125.11 added several exceptions, "but did not otherwise disturb the Wexford definition," discusses neither the Wexford definition nor the effect of the new regulation on existing caselaw.  In its August 17, 2021 decision, the OHA did not explicitly articulate why it believes the cited rule-making document supports its conclusion that the Wexford definition remains largely undisturbed.  Absent such an articulation, it is unclear to the court how the OHA arrived at this conclusion, and the court is unable to evaluate the same.
>
> Second, the authority upon which the OHA relies, in addition to Wexford, is equally flawed.  The OHA issued its decision in Veterans Contracting Group, Inc., SBA No. VET-265, 2017 WL 4124865 (Aug. 21, 2017), prior to the

---

[2]     The court detailed the factual background of this case in its March 4, 2022 opinion and will not repeat that background here.  For a recitation of the factual background underlying the dispute in this case see ECF No. 47 at 3-5 (sealed opinion and order), and ECF No. 51 (opinion and order reported at E&L Constr. Grp., LLC v. United States, 159 Fed. Cl. 115, 117-19 (2022)).

3

> issuance of the new regulation. As a result, the holding in that decision cannot provide insight into the continued applicability of pre-2018 SBA decisions to the new regulation that mirrors the pre-2018 VA language.
>
> And third, in 2018, the [United States Court of Appeals for the] Federal Circuit dismissed as moot an appeal that was filed just before the new regulations took effect . . . . It appears to the court that the Federal Circuit chose to dismiss the case, at least in part, due to the effect of the new regulations on the Wexford standard. As such, the effect of the regulations was an operative part of the Circuit's decision.

Id. at 9-10 (footnote and citations omitted).

The OHA issued a decision in response to the remand on June 13, 2022, once again finding that plaintiff is not an eligible SDVOSB. See ECF No. 59-2 at 47-69 (OHA decision reported at Randy Kinder Excavating, Inc. d/b/a RKE Contractors, SBA No. CVE-232, 2022 WL 2384609 (June 13, 2022)). The parties then requested that the court permit them to submit "supplemental briefing addressing only SBA OHA's explanation in response to the remand order," because they understood the OHA's decision to be a "supplement to its original decision," rather than a new decision requiring plaintiff to file amended pleadings. ECF No. 57 at 1 (joint status report). The court agreed that no amended pleadings were required and ordered the parties to file supplemental briefs addressing the SBA OHA's remand decision. See ECF No. 58 (order). Because, however, the court has ruled on the parties' cross-motions for judgment on the AR, the court deems the supplemental briefs to be renewed motions for judgment on the AR.

      B.      The OHA's Decision on Remand

In its June 13, 2022 decision on remand, the OHA determined that plaintiff was not eligible to compete as a SDVOSB because it was not unconditionally owned by a service-disabled veteran. See Randy Kinder Excavating, 2022 WL 2384609 at *1. In its first decision, the OHA had explained, in pertinent part:

> OHA has consistently applied the Wexford standard. In Matter of Veterans Contracting Group, Inc., SBA No. VET-265 (2017), OHA explicitly rejected the Court of Claims reasoning in Miles and AmBuild, because those cases were based upon a different Department of Veterans Affairs regulation. OHA's definition was upheld in Veterans Contracting Group, Inc. v. United States, 135 Fed. Cl. 316, 321 (2017). The court found that although it felt that Wexford "produces draconian and perverse results in a case such as this one", it had to uphold OHA's interpretation of the regulation. Veterans Contracting, at 328.

4

. . .

> Thus, SBA later defined unconditional ownership at 13 C.F.R. § 125.11, adding the exceptions for death, incapacity, and pledges of stock as collateral if the terms follow normal commercial practices, but did not otherwise disturb the <u>Wexford</u> definition. 83 Fed[.] Reg. 48908, 48909 (Sep. 28, 2018). OHA has further held that provisions of an Operating Agreement dealing with the bankruptcy of an owner do not render that ownership conditional. <u>Matter of Veterans Contracting Group, Inc.</u>, SBA No. VET-265, at 8 (2017).
>
> The definition of unconditional ownership is therefore clear. The Service-Disabled Veteran's ownership of the challenged concern must be unlimited, with no restrictions whatever on their ownership, or their ability to dispose of their [s]hares in anyway they choose.

<u>Randy Kinder Excavating, Inc. d/b/a RKE Contractors</u>, SBA No. CVE-198, 2021 WL 4071503 at *21-22 (August 17, 2021).

The OHA expanded upon its original reasoning in the June 13, 2022 decision. <u>See Randy Kinder Excavating</u>, 2022 WL 2384609 at *17-20. The OHA reviewed the rulemaking:

> Although the VA and the SBA 8(a) [Business Development (BD)] program had nearly identical definitions prior to 2018, the interpretations diverged. SBA clearly states in the preambles of both, the proposed and final rules, that the source for the regulation is the definition of unconditional ownership from SBA's 8(a) BD program found at 13 C.F.R. § 124.3. <u>See</u> 83 Fed. Reg. 4005, 4006 (January 29, 2018). SBA said nothing about abandoning the longstanding <u>Wexford</u> definition. The final rule did not alter the proposed rule on this issue, emphasizing that SBA was adopting the definition from the 8(a) BD program, and rejecting a comment that the definition should be subject to the same conditions as "extraordinary circumstances" because SBA did not want to conflate ownership and control requirements. SBA, thus, signaled its intention to limit exceptions only to those specifically mentioned in the definition under 83 Fed. Reg. 48908, 48909 (September 28, 2018).
>
> The definition of unconditional ownership was thus taken from SBA's 8(a) BD program. SBA's [Standard Operating Procedure (SOP)] on the 8(a) BD program discusses unconditional ownership in more detail:
>
>> (1) In reviewing the ownership structure of an applicant firm, the BOS [Business Opportunity Specialist] <u>must verify that</u>

5

> there are no conditions on the interests held by the firm's disadvantaged owners. The interests of the disadvantaged owners cannot be subject to any executory agreements, voting trusts, restrictions on or assignments of voting rights, or any other arrangements or conditions that could result in the transfer of their interests to other parties.  This restriction does not include arrangements for the transfer of ownership interests in the event of the holder's death or incapacity.
>
> (2) If an applicant has pledged or encumbered his or her stock or other ownership interest as collateral on a loan or other obligation, this does not violate the requirement of unconditional ownership.  However, the terms of the loan or obligation must follow normal commercial practices and the disadvantaged owner must retain control over the firm unless and until there is a default on the loan or obligation.
>
> SBA SOP 80 05 5, Chapter 2D, § 8(b), emphasis supplied.
>
> The extended discussion in the 8(a) BD SOP thus emphasizes that there can be no conditions on the interests held by the owners of the firm upon whom the firm's claim of eligibility is based.  It also further clarifies that the exception for terms which follow "normal commercial practices" is limited to pledges or encumbrances of an ownership interest as collateral.  Thus, the only circumstance in which the "normal commercial practices" standard can be used to find that a provision does not compromise an SDV's unconditional ownership is in the case of a pledge or other encumbrance of an ownership interest.  This is in contrast to the course taken by the COFC in Miles and AmBuild, which measured other terms of a challenged concern's ownership agreement by whether they followed "normal commercial practices".  Under the SBA regulations, that standard can only be considered in evaluating a pledge or encumbrance of the ownership interest of the individual upon whom a concern's claim of eligibility is based.  The "normal commercial practices" standard cannot be used to determine whether any other provision renders an individual's ownership conditional.

Id. at *19 (emphasis in original).  The OHA then noted that the SBA's Office of General Counsel "emphasize[s] that SBA continues to adhere to the interpretation of 'unconditional ownership' that the term requires that the Service-Disabled Veteran owner immediately and fully own his or her ownership interest and be able to dispose of it as they want without any restrictions." Id. at *20.  It held that because SBA has "consistently maintained this interpretation over the years . . . [d]eference to SBA's interpretation is [ ] warranted here." Id.

6

The OHA further stated that, although the Federal Circuit "did state that the 2018 regulations overturned Wexford," that statement was "dicta because the case was dismissed as moot." Id. (citing Veterans Contracting Grp., Inc. v. United States, 743 F. App'x 439 (Fed. Cir. 2018)). The OHA concluded that because the "SBA regulations did not invalidate Wexford," the Federal Circuit's dismissal on the grounds of mootness "does not compel a rejection of SBA's interpretation of the regulation." Id.

The OHA thus confirmed that "the Wexford standard remains undisturbed." Id. It therefore reaffirmed its prior decision that plaintiff "is not at least 51% unconditionally owned by an SDV." Id. at *21.

II.     Legal Standards

In its complaint, plaintiff invokes this court's bid protest jurisdiction. See ECF No. 1 at 1. This court's bid protest jurisdiction is based on the Tucker Act, which gives the court authority:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1). The Tucker Act also states that the court may grant "any relief that the court considers proper . . . including injunctive relief." 28 U.S.C. § 1491(b)(2).

To establish jurisdiction, a plaintiff must therefore demonstrate that it is an "interested party." 28 U.S.C. § 1491(b)(1). The Federal Circuit has held that the "interested party" requirement "imposes more stringent standing requirements than Article III." Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009). Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest.'" See id. (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006)) (alteration in original).

Once jurisdiction is established, the court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). First, the court determines, pursuant to the Administrative Procedure Act standard of review, 5 U.S.C. § 706, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C.

7

§ 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)).  If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial.  See Bannum, 404 F.3d at 1351.

To establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'"  Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).  "In other words, the protestor's chance of securing the award must not have been insubstantial."  Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citations omitted).  The substantial chance requirement does not mean that plaintiff must prove it was next in line for the award but for the government's errors.  See Sci. & Mgmt. Res., Inc. v. United States, 117 Fed. Cl. 54, 62 (2014); see also Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract.").  But plaintiff must, at minimum, show that "had the alleged errors been cured, . . . 'its chances of securing the contract [would have] increased.'"  Precision Asset Mgmt. Corp. v. United States, 125 Fed. Cl. 228, 233 (2016) (quoting Info. Tech., 316 F.3d at 1319).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential."  Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As the Supreme Court of the United States has explained, the scope of review under the "arbitrary and capricious" standard is narrow.  See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974).  "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,'" and "'[t]he court is not empowered to substitute its judgment for that of the agency.'"  Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, 575 F.3d at 1368-69 (stating that under a highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

III.     Analysis

In the court's view, the OHA's June 13, 2022 decision addresses the concerns outlined in the court's remand opinion and order, see ECF No. 51 at 9-10, and the decision provides the necessary reasoned basis for the OHA's determination.

Plaintiff argues in its renewed motion that the OHA's decision to defer to the SBA's interpretation of the regulation was flawed because of the SBA's "illogical reliance on Wexford and the inconsistencies inherent in interpreting identical language differently for various programs."  ECF No. 60 at 10.  According to plaintiff, "the basic

8

tenets of statutory interpretation dictate that newly enacted regulations and statutes supersede prior jurisprudence on that point." Id. at 7. Plaintiff therefore concludes that the OHA's determination that the SBA's regulation was silent on Wexford and, therefore, did not abandon it, was "not persuasive." Id.

Defendant responds that the "OHA has articulated a well-reasoned legal basis for the continued application of the Wexford standard in conjunction with Section 125.11."[3] ECF No. 62 at 12 (capitalization and bolding removed). According to defendant, "[s]ince 2018, OHA has interpreted Section 125.11 as being consistent with the Wexford standard," and the "SBA did not intend for the judicially-created . . . standard from Am[B]uild and Miles to be applied to **any** contract provision." Id. at 13 (emphasis in original).

Plaintiff further argues that the OHA contradicted its own conclusions when it both held that the VA's SDVOSB program regulation and the SBA's 8(a) program regulation defining unconditional ownership should be interpreted in the same manner "as outlined in the SBA's SOP on the 8(a) program," and held that the Wexford standard should be applied for SDVOSB program evaluation. ECF No. 60 at 7. Plaintiff thus contends that the court should rely instead on "federal jurisprudence," id. (capitalization and bolding removed), and follow this court's interpretation of unconditional ownership in Miles Constr., LLC v. United States, 108 Fed. Cl. 792 (2013), and AmBuild, LLC v. United States, 119 Fed. Cl. 10 (2014), see id.

Defendant, however, responds that the OHA's analysis of the SBA's conduct in the rulemaking process—not explicitly abandoning the Wexford standard and rejecting a comment suggesting that the 2018 definition be subject to the conditions applied to a service-disabled veteran's control of a business—was a sufficient legal basis for the decision. See ECF No. 62 at 14-18. Defendant contends that the court should defer to the OHA's interpretation of the regulation. See id. at 18.

The court agrees with defendant that the OHA's decision is sufficiently reasoned and explained. In the court's view, the OHA's review of the SBA's precedent and rulemaking process and application of that background to the interpretation of the regulation constitutes a sufficient legal basis for its decision. The OHA pointed to specifics in the regulatory history and the SBA's procedures to explain its position that the regulation left the Wexford standard undisturbed. See, e.g., Randy Kinder Excavating, 2022 WL 2384609 at *19 (discussing the proposed and final rules); id. (discussing the SBA standard operating procedures). The OHA also reviewed the SBA's interpretation of the regulation over time by reviewing comments from the SBA's Office

---

[3] Because intervenor-defendant's arguments track closely with defendant's, the court does not separately discuss intervenor-defendant's arguments because they are neither different from the arguments made by defendant nor pertinent to this decision.

of General Counsel, and explained why the SBA's interpretation outweighs court precedent. See id. at *20 (discussing the SBA's comments and prior precedent). Finally, the OHA addressed the Federal Circuit case in which the court dismissed as moot an appeal that was filed just before the new regulations took effect. See id. (citing Veterans Contracting Grp., 743 F. App'x at 440). The OHA noted that, while the Federal Circuit stated that the new regulations overturned Wexford, it concluded that language was dicta and not binding because the appeal was dismissed as moot because of a lack of remedies—not because of any change in law. See id.

"Reversal is limited to those situations where OHA has acted irrationally or has erroneously applied relevant procurement law." Team Waste Gulf Coast, LLC v. United States, 135 Fed. Cl. 683, 687 (2018) (citing Eagle Design & Mgmt., Inc. v. United States, 57 Fed. Cl. 271, 273 (2002)). The OHA has not done so here, and the court, therefore, must defer to the OHA's decision. See LB & B Assocs., Inc. v. United States, 68 Fed. Cl. 765, 771 (2005) (quoting Ceres Envt'l Servs., Inc. v. United States, 52 Fed. Cl. 23, 33 (2002)) (noting that the court gives "special deference" to the OHA's decisions "because of the SBA's 'quasi-technical administrative expertise and [its] familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme'"). Further, "[t]he court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, 401 U.S. at 416. The court will, therefore, "sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'" Weeks Marine, 575 F.3d at 1368-69 (citing Advanced Data Concepts, 216 F.3d at 1058). Review of the OHA's decision and explanation reveals the necessary "rational reasoning and consideration of relevant factors." Id.

The court thus finds that the OHA's decision was neither arbitrary nor capricious. Plaintiff's motion must, therefore, be denied.

IV.   Conclusion

Accordingly, for the foregoing reasons:

(1) The clerk's office is directed to **DEEM** plaintiff's supplemental brief, **ECF No. 60**, **as plaintiff's renewed motion for judgment on the AR**; intervenor-defendant's supplemental brief, **ECF No. 61**, **as intervenor-defendant's renewed cross-motion for judgment on the AR**; and defendant's supplemental brief, **ECF No. 62**, **as defendant's renewed cross-motion for judgment on the AR**;

(2) Plaintiff's renewed motion for judgment on the AR, ECF No. 60, is **DENIED**;

Case 1:21-cv-01765-PEC   Document 66   Filed 08/22/22   Page 11 of 11

(3) Intervenor-defendant's renewed cross-motion for judgment on the AR, ECF No. 61, is **GRANTED**;

(4) Defendant's renewed cross-motion for judgment on the AR, ECF No. 62, is **GRANTED**;

(5) The clerk's office is directed to **ENTER** final judgment in defendant's and intervenor-defendant's favor **DISMISSING** plaintiff's complaint with prejudice; and

(6) On or before **August 24, 2022**, the parties are directed to **CONFER** and **FILE** a **notice** attaching the parties' agreed upon redacted version of this opinion, with all competition-sensitive information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith  
PATRICIA E. CAMPBELL-SMITH  
Judge

11